U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JAN -9 PM 3: 44

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WILLIAM VINCI, LINDA VINCI, )
TNF GEAR, INC., )
 )
    Plaintiffs, )
 )
v. ) Case No. 2:17-cv-00091
 )
V.F. CORP., VF OUTDOOR, LLC, )
 )
    Defendants. )

**OPINION AND ORDER TRANSFERRING TNF GEAR, INC.'S
CLAIMS AGAINST DEFENDANT VF OUTDOOR, LLC
TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

(Doc. 9)

Plaintiffs William and Linda Vinci (the "Vincis") and TNF Gear, Inc. ("TNF") bring state law claims against Defendants V.F. Corp. ("V.F. Corp.") and VF Outdoor, LLC ("VF Outdoor"), arising out of the parties' "business arrangement" for the purchase and sale of The North Face branded products. Pending before the court is Defendant VF Outdoor's motion to dismiss Plaintiff TNF's claims under Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) on the basis of a forum selection clause contained within a Multiparty Guaranty Agreement (the "Agreement") between TNF, VF Outdoor, and a non-party corporation controlled by the Vincis (Doc. 9).[1]

The parties completed their briefing on August 17, 2017. The court heard oral argument on October 19, 2017, after which it took the pending motions under

---

[1] Defendant V.F. Corp. filed its own motion to dismiss all claims against it for lack of personal jurisdiction, and both Defendants filed a joint motion to dismiss the Vincis' claims in their individual capacities for failure to state a claim and failure to plead fraud with particularity. Those motions will be addressed in a separate Order.

advisement. Plaintiffs are represented by David E. Bond, Esq. Defendants are represented by R. Jeffrey Behm, Esq.

I. **The Allegations of the Amended Complaint.**

The Vincis are husband and wife and the sole shareholders of TNF, a Vermont corporation with its principal place of business in Burlington. In 2001, TNF opened The North Face Store @ KL Sport in Shelburne, Vermont, which was later moved to College Street in Burlington and then to 90 Church Street in Burlington. TNF's store sold only The North Face branded apparel purchased at wholesale. In their Amended Complaint, Plaintiffs allege that until 2015, "The North Face was positioned as a premium brand," and Defendants required them to adhere to manufacturer approved pricing plans that dictated correspondingly high retail prices. (Doc. 5 at 3, ¶ 11.) Plaintiffs allege that Defendants "represented to Plaintiffs that these policies applied to all retailers selling The North Face products." *Id.* at ¶ 9.

In early 2015, Plaintiffs placed their yearly order for winter apparel, totaling approximately $1.2 million in merchandise. In the fall of 2015, after Plaintiffs accepted delivery of those products, Defendants allegedly dramatically reduced their wholesale prices for sales made to third-party vendors. These third-party vendors, in turn, sold the discounted merchandise at significantly reduced retail prices to the general public, in violation of the marketing policies with which Defendants required Plaintiffs to comply. Plaintiffs claim that they were unable to compete with the significantly reduced prices, and that even if they could match them, they were barred from doing so pursuant to their promise to adhere to Defendants' manufacturer approved pricing plans. Plaintiffs allege that they fell "deeply into debt[,]" *id.* at 3, ¶ 13, and reported this to Defendants who promised to "reign[] in" the third-party discounters. *Id.* at 4, ¶ 14.

In 2016, Plaintiffs purchased $650,000 in winter apparel inventory, and in the fall of that year Defendants again allegedly offered the same apparel to third-party vendors at steep discounts. Plaintiffs allege that they were again substantially underpriced by other retailers and were unable to maintain profitability. "As a result of Defendants' actions, the Vincis exhausted their savings and their credit, and in under 20 months saw their

2

business go from a successful enterprise to the verge of failure." *Id.* at 4, ¶ 17. The Vincis claim they offered to sell their business to Defendants, but that Defendants refused to entertain a fair market value purchase.

On May 23, 2017, Plaintiffs filed this suit against V.F. Corp., alleging breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment under Vermont common law. On June 19, 2017, Plaintiffs amended their complaint to include VF Outdoor as a defendant, stating that VF Outdoor "is a wholly-owned subsidiary of [V.F. Corp.] On information and belief, [VF Outdoor] is the owner of The North Face brand, and operates a division under the trade name, 'The North Face.'" *Id.* at 1. The Amended Complaint includes a jury demand and seeks $5 million in damages.

On July 18, 2017, Defendant VF Outdoor sought dismissal of the claims against it on the basis of the forum selection clause in section 13 of the Agreement. VF Outdoor included the affidavit of Lisa Long with its motion, which incorporated the Agreement as an exhibit. Ms. Long serves as Senior Credit Manager at VF Outdoor and signed the Agreement on its behalf.[2] William Vinci signed the Agreement on behalf of TNF.

Section 10 of the Agreement is entitled "Applicable Law" and states that "this guaranty shall be governed by, and shall be construed and enforced in accordance with, the internal law of the state of California, without regard to conflict of laws principles." (Doc. 9-3 at 6.) Section 13 is entitled "Consent to Jurisdiction" and states in pertinent part that "any legal action or proceeding with respect to [the Agreement] . . . shall be brought in the courts of the State of California, County of Alameda or the United States of America for the Northern District of California, Oakland Division[.]" (Doc. 9-3 at 6.)

VF Outdoor argues that section 13 divests the court of jurisdiction over any claims arising out of the business relationship between itself and TNF. Plaintiffs oppose both

---

[2] The court may consider materials outside the complaint in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) or 12(b)(3). Because VF Outdoor's motion is properly characterized as one for a transfer, in ruling on the motion "a district court normally relies solely on the pleadings and affidavits[.]" *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014).

3

dismissal and transfer, asserting that the Agreement was the product of both procedural and substantive unconscionability. They ask the court to decline to enforce section 13 of the Agreement on that basis.

## II. Conclusions of Law and Analysis.

### A. Enforcement of a Forum Selection Clause Under Rule 12.

VF Outdoor relies on three subsections of Fed. R. Civ. P. 12(b) for its motion to enforce the forum selection clause in the Agreement, pointing out that the Second Circuit has refused "to pigeon-hole these claims into a particular clause of Rule 12(b)." *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006). Clause (b)(1) of Fed. R. Civ. P. 12 allows the court to dismiss claims for lack of subject matter jurisdiction, clause (b)(3) permits dismissal for improper venue, and clause (b)(6) provides for dismissal when plaintiffs fail to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b). Recent guidance from the Supreme Court counsels against using Rule 12 as a vehicle for enforcing forum selection clauses. *See Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) (holding that district courts may not dismiss on the basis of improper venue under Rule 12(b)(3) where venue is otherwise proper but a forum selection clause governs). Instead, "the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)[.] Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.*

Second Circuit cases have followed *Atlantic Marine* when considering the effect of forum selection clauses. *See, e.g., MBC Fin. Servs. Ltd. v. Boston Merch. Fin. Ltd.*, No. 16-3704-cv, 2017 WL 3616347, at *1 (2d Cir. Aug. 23, 2017) (summary order) ("*Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, [] 134 S. Ct. 568, 581[] (2013), holds that forum non conveniens is the proper mechanism for enforcing a forum selection clause at the motion to dismiss stage."). Accordingly, the court will treat VF Outdoor's Rule 12 motion as a motion to transfer under 28 U.S.C. § 1404(a).

4

## B. Whether the Agreement's Forum Selection Clause is Enforceable as a Matter of Contract Law.

By its terms, the forum selection clause in section 13 of the Agreement binds the parties to litigate "any legal action" in California state courts or the United States District Court for the Northern District of California. Section 10 of the Agreement states that "the internal laws of the state of California, without regard to conflict of laws principles" will govern disputes arising out of the parties' "Business Arrangement." (Doc. 9-3 at 6, § 10) (capitalization omitted). The court must therefore determine whether Vermont law or California law controls the question of the forum selection clause's unconscionability. The Second Circuit has held that where district courts are presented with a choice of law provision, the inquiry is "whether, under applicable state choice of law principles, that provision would be honored." *Valley Juice Ltd. v. Evian Waters of France, Inc.*, 87 F.3d 604, 607 (2d Cir. 1996). "As a general matter in diversity cases, [district courts] follow the substantive law of the state in which the district court sits, including its choice of law rules." *Id.* Under Vermont law, the court must then determine whether Vermont or California substantive contractual law will apply.

The Vermont Supreme Court "has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases." *McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000). It has further held that, "in the absence of a statute in the forum state providing otherwise, it is well-settled that it would be contrary to the justified expectations of the parties for a court to interpret their agreement by the laws of any jurisdiction other than that specified in the contract." *Stamp Tech, Inc., ex rel. Blair v. Ludall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 23, 186 Vt. 369, 380, 987 A.2d 292, 298 (2009). If the difference between Vermont law and the law of the chosen forum is "cruel or shocking to the average man's conception of justice," Vermont courts may decline to enforce choice of law provisions on public policy grounds. *Id.* at ¶ 22 (internal quotation marked omitted). Outside this narrow exception, Vermont courts "apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties." *Id.* at ¶ 23.

5

Plaintiffs fail to identify any reason why California contract law would be "cruel or shocking to the average man's conception of justice" when applied to their claims. *Stamp Tech*, 2009 VT 91, ¶ 22. California law therefore governs the enforceability of the forum selection clause in the Agreement.

The California Supreme Court has defined unconscionability as "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243, 367 P.3d 6, 11 (2016) (citation and internal quotation marks omitted). "[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133, 311 P.3d 184 (2013)). Procedural and substantive unconscionability must both be present, but "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 6 P.3d 669 (2000)).

"There are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Baltazar*, 62 Cal. 4th at 1244 (citation, alterations, and internal quotation marks omitted) (omission in original). The California Supreme Court has "used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond a simple old-fashioned bad bargain.*" *Id.* at 245 (internal citations and quotation marks omitted) (emphasis in original). It has recently emphasized that "not all one-sided contract provisions are unconscionable[.]" *Id.*

Plaintiffs argue that the Agreement itself was the product of grossly unequal bargaining power. They provide a declaration from William Vinci which states that TNF was unique, in that it was the only independent retailer in the country which marketed

6

and sold exclusively The North Face branded products. (Doc. 13-1 at 2, ¶ 3.) Mr. Vinci further avers that "[i]n October, 2011, [VF Outdoor] . . . presented us with [the Agreement] . . . which we were required to sign as a condition of continuing to do business as sellers of The North Face products." *Id.* at 3, ¶ 5. He explains that "[t]o refuse would have meant simply walking away from more than a ten-year investment in our business." *Id.* Plaintiffs argue that VF Outdoor took "advantage of Plaintiffs' uniquely dependent circumstances" and "gave Plaintiffs no choice except to sign on the dotted line or abandon their business[.]" (Doc. 13 at 3.) They assert that the forum selection clause is substantively unconscionable because it was the result of "overweening bargaining power." *Id.* (quoting *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

To rebut Plaintiffs' unconscionability claim, Defendants rely on an August 17, 2017 affidavit submitted by Lisa Long, wherein she avers that VF Outdoor requested that TNF sign the Agreement in 2011 after VF Outdoor discovered that the Vincis were using two corporations to run their business. The Vincis' original credit line in the amount of $900,000, was issued to a non-party corporation under the Vincis' control. In the fall of 2011, "William Vinci contacted VF Outdoor's sales agency principal on behalf of TNF" to seek an increase in the line of credit for the purposes of expanding the store's operations. (Doc. 17-1 at 1, ¶ 3.) VF Outdoor determined that because the Vincis used both TNF and a non-party corporation to run the business, a guarantee from each of the Vincis' corporations "would be needed in order to approve a credit increase for [TNF]." *Id.* at 2, ¶ 6. Ms. Long avers that Mr. Vinci "expressed no objection to executing such a guaranty." *Id.* She further states that "VF Outdoor sent [the Agreement] to Mr. Vinci in October of 2011 for his review, and two weeks later Mr. Vinci returned [the Agreement] executed by Mr. Vinci on behalf of both [corporations]." *Id.* Ms. Long notes that "Plaintiffs were not obligated to seek a credit increase. If they had found the terms of the Agreement unacceptable, they could have objected and continued to operate under the existing $900,000 credit line, or could have sought credit from other sources." (Doc. 17 at 3.)

7

Under California law, the foregoing facts do not rise to either procedural or substantive unconscionability because there was no "absence of meaningful choice" on TNF's part or "contract terms which are unreasonably favorable to" VF Outdoor. *Baltazar*, 62 Cal. 4th at 1243 (citation and internal quotation marks omitted). California courts "will enforce forum selection clauses contained in a contract freely and voluntarily negotiated at arm's length unless enforcement would be unfair or unreasonable." *Hunt v. Superior Court*, 81 Cal. App. 4th 901, 908, 97 Cal. Rptr. 215 (Cal. App. 2000); *see Intershop Commc'ns v. Superior Court*, 104 Cal. App. 4th 191, 201-02, 127 Cal. Rptr. 847 (Cal. App. 2002) (holding that "[a] forum selection clause within an adhesion contract will be enforced as long as the clause provided adequate notice to the party that he was agreeing to the jurisdiction cited in the contract.") (internal quotation marks and alterations omitted). The focus is on whether "the clause provided adequate notice to the defendant that he was agreeing to the jurisdiction cited in the contract," when determining whether the Agreement is unconscionable. *Id.*

While it is true that Plaintiffs had less bargaining power than VF Outdoor, there is no evidence that Plaintiffs were forced to accept either the Agreement or its forum selection clause, or had inadequate notice that it required any litigation to enforce it to take place in California courts. There is also no evidence that they objected to the clause or failed to understand it. The forum selection clause is prominently displayed in the Agreement which is eight pages in length. The forum selection clause is therefore valid and enforceable under California law.

### C. Whether the Forum Selection Clause is Enforceable Under Federal Law.

Federal courts "distinguish between the *interpretation* of a forum selection clause and the *enforceability* of the clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (emphasis in original). "The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law." *Id.* Thus, even if section 13 of the Agreement is enforceable as a matter of state substantive law, the court must apply federal law to determine if it is enforceable in this court.

In the Second Circuit, the enforceability of a forum selection clause is governed by a four part test: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause"; and (4) whether "enforcement would be unreasonable or unjust, or that the clause was invalid[.]" *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (citations omitted). "In answering the interpretive questions posed by parts two and three of the four-part framework . . . [courts] normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217-18 (emphasis in original).

The threshold inquiry to determine whether the forum selection clause was reasonably communicated to the party resisting enforcement is generally met where the terms of the clause are "plainly printed" in the contract and the party resisting enforcement had an opportunity to review the terms. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). The forum selection clause is included on page six of the eight page Agreement in its own numbered paragraph, labeled in bold print as follows: "**CONSENT TO JURISDICTION**." (Doc. 9-3 at 6, ¶ 13.) Plaintiffs do not argue that notice of the clause's inclusion was inadequate or that is not "plainly printed" in the Agreement.

The court must next "decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." *Phillips*, 494 F.3d at 383 (emphasis in original). The Second Circuit has observed that it "normally appl[ies] the body of law selected in a valid choice-of-law clause" when analyzing whether a particular forum selection clause is mandatory or permissive. *Martinez*, 740 F.3d at 217-18. Section 13 of the Agreement states that "any legal action" "shall be brought" in California. (Doc. 9-3 at 6.) "[E]mphatic" language like "shall be litigated" and "any claims shall be prosecuted" is recognized as creating a mandatory jurisdictional requirement under California law. *Intershop Commc'ns*, 104 Cal. App. 4th at 196 (collecting cases) (internal citations and quotation marks omitted). Indeed, California

courts have also held that less direct language can constitute a mandatory clause. *See id.* (finding "[t]o the extent permitted by the applicable laws the parties elect Hamburg to be the place of jurisdiction" mandatory) (internal quotation marks omitted).

Third, the court must consider "whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (internal quotation marks omitted). Defendants argue that each of TNF's claims against VF Outdoors in the Amended Complaint derives from the "Business Arrangement" between the TNF and VF Outdoors and section 13 of the Agreement covers all disputes arising out of that relationship. Plaintiffs do not contend otherwise. The California Supreme Court has applied choice-of-law provisions to claims for breaches of contract and the implied covenant of good faith based on similar forum selection provisions. *See, e.g., Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-66, 834 P.2d 1148, 1150-52 (1992) (en banc) (*citing Smith, Valentino & Smith v. Superior Court*, 17 Cal. 3d 491, 495-96, 551 P.2d 1206 (1976)) (finding that "Hong Kong law . . . govern[s] all causes of action pleaded in the amended complaint, including the contract cause of action.") Although the Vincis' claims against VF Outdoor in their individual capacities are not subject to the forum selection clause because they are not signatories to the Agreement, TNF's claims are clearly covered.

> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by [] making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez*, 740 F.3d at 211 (internal quotation marks omitted). The Supreme Court has emphasized that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine*, 134 S. Ct. at 581. As a result, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks and alteration omitted). Moreover,

a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. Where parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses or for their pursuit of the litigation.

*Id.* at 582.

Plaintiffs' argument that California would be a highly inconvenient and expensive forum for them does not provide grounds for the forum selection clause's non-enforcement without a further claim that it would be impossible for them to litigate there. As the court may only consider "public-interest factors" in deciding whether or not to transfer the case to the parties' designated forum, and as Plaintiffs have failed to identify a public interest that requires this case to be litigated in Vermont, the Agreement's forum selection clause must be enforced.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant VF Outdoor's motion to enforce the forum selection clause in the Agreement. The court ORDERS that Plaintiffs' claims against VF Outdoor are hereby TRANSFERRED to the United States District Court for the Northern District of California, Oakland Division.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 9th day of January, 2018.

Christina Reiss, District Judge
United States District Court

11