UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TNF GEAR, INC., et al.,<br><br>    Plaintiffs/Counter-defendants,<br><br>v.<br><br>VF OUTDOOR, LLC,<br><br>    Defendant/Counter-plaintiff. | Case No.18-cv-00253 JSC<br><br>Consolidated Case No. 18-cv-4126 JSC<br><br>**ORDER RE: VF OUTDOOR'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 91 |

Plaintiffs William and Linda Vinci and TNF Gear, Inc., a Vermont corporation of which the Vincis are the sole shareholders, filed this civil action against Defendant VF Outdoor, LLC, which operates a division under the brand name "North Face."[1] Defendant filed counterclaims against Plaintiffs and KL Sport Inc., TNF Gear's predecessor. The claims and counterclaims arise out of a business arrangement between the parties wherein TNF Gear acted as a reseller of The North Face merchandise.[2] VF Outdoor's motion for summary judgment is now pending before the Court. (Dkt. No. 91.) Having considered the parties' briefs and having had the benefit of oral argument on July 29, 2019, the Court GRANTS VF Outdoor's motion for summary judgment. There is no dispute of material fact as to VF Outdoor's breach of contract counterclaims and Plaintiffs' defenses to these claims fail as a matter of law, and Plaintiffs have failed to establish a genuine dispute of fact with respect to their claims for relief.

---

[1] Plaintiffs initially brought suit against VF Corporation, VF Outdoor's parent, as well but the Vermont District Court dismissed the claims against VF Corporation for lack of personal jurisdiction prior to transferring the action to this Court and Plaintiffs never moved in this Court to return them to the lawsuit.

[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 26, 28, 50.)

**SUMMARY JUDGMENT EVIDENCE**

VF Outdoor markets, distributes, and sells The North Face (hereafter "North Face") apparel, outerwear, footwear, equipment, and accessories. (Dkt. No. 91-1, Erlick Decl. at ¶ 4.[3]) VF Outdoor sells North Face merchandise for resale to authorized third-party retail dealers, and directly to consumers at its own brick-and-mortar full-price and outlet stores, as well as on the internet at thenorthface.com. (*Id*.) To purchase North Face merchandise, a retailer submits a purchase order to VF Outdoor. (Dkt. No. 91-2, Long Decl. at ¶ 5.)

In 1998, William and Linda Vinci founded KL Sports, Inc. which operated out of a storefront at the Tenneybrook Mall in Shelburne, Vermont. (Dkt. No. 94-1, Vinci Decl. at ¶ 3.) In 2003, the Vincis started an ecommerce platform. (*Id*. at ¶ 5.) A year later, the Vincis transferred the majority of their operations to a storefront on College Street in Burlington, Vermont where they exclusively sold North Face products under the trade name The North Face at KL Sports. (*Id*. at ¶ 4.)

In 2011, TNF Gear and KL Sports, Inc., executed a Multiparty Guaranty with VF Outdoor. (Dkt. No. 91-2 at ¶ 3; Ex. K.) The Guaranty provided that "to induce North Face to continue its Business Arrangement" with TNF Gear and KL Sports, Inc (the Guarantors), the Guarantors jointly and severally agreed to "unconditionally, absolutely, and irrevocably guarantee" the "prompt and complete payment" of "all loans, advances, debts, liabilities and obligations for monetary amounts" to VF Outdoor. (*Id*. at ECF 10.) The following year, TNF Gear submitted a Credit Application to VF Outdoor seeking a $1.2 million line of credit, which was approved. (Dkt. No. 91-2 at ¶ 4; Ex. L at ECF 19; Dkt. No. 32 at ¶ 25; Dkt. No. 51 at ¶ 25.[4]) The line of credit was secured by a personal guarantee from the Vincis. (Dkt. No. 91-2, Ex. L at ECF 20.)

In 2013, the Vincis began transitioning operations from KL Sport to TNF Gear, Inc., and

---

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[4] This fact and others cited herein are based on facts alleged in the cross-complaint and cross-complaint answer (Dkt. Nos. 32 & 51). *See Lockwood v. Wolf Corp*., 629 F.2d 603, 611 (9th Cir. 1980) (holding that "failure to deny the allegation in its answer to the [] complaint constitutes an admission.").

the following year, they opened a second location in Burlington's Church Street Marketplace which exclusively sold North Face products. (Dkt. No. 94-1 at ¶ 6.) VF Outdoor "encouraged and assisted [the Vincis] in becoming stand-alone dealers of exclusively The North Face products." (*Id*. at ¶ 7.) As part of this process, "VF Outdoor contracted and paid for the fit-out" of both of the TNF Gear stores. (*Id*. at ¶ 8.)

In 2015, the Vincis "were invited to participate in VF Outdoor's newly established 'Brand Partner' program" which was "touted as providing benefits to a select group of specialty retailers with a demonstrated record of commitment to the brand." (*Id*. at ¶ 15.) The Brand Program provided retailers with the option to purchase select merchandise at a 15% discount, with a 90-day payment window. (*Id*. at ¶ 16; Dkt. No. 91-1 at Exs. B & C.) The Vincis' participation was "conditioned on increasing [their] season's order by 15% over the prior year." (Dkt. No. 94-1 at ¶ 16.) In 2015, TNF Gear purchased approximately $1.5 million of North Face merchandise from VF Outdoor. (Dkt. No. 32 at ¶ 27; Dkt. No. 51 at ¶ 27.)

The Vincis also participated in VF Outdoor's Dealer Co-op Advertising Program. (Dkt. No. 94-1 at ¶¶ 18, 22.) Under this Program, "dealers were eligible to receive 'co-op' reimbursement for pre-approved advertising in an amount of up to one percent of their net invoiced dollars of full-priced The North Face products." (*Id*. at ¶ 18.) Eighty to ninety percent of North Face retailers participated in the co-op advertising program—including all but one of North Face's ten largest retailers. (Dkt. No. 91-1 at ¶ 6.) The program requirements are set out in "The North Face Dealer Co-op Advertising Program Overview and Guidelines." (Dkt. No. 91-1, Ex. A.) The guidelines state that "[f]or assurance that your advertising content will comply with the advertising guidelines, which is a requirement for reimbursement, pre-approval is required for all dealer-created advertisements." (Dkt. No. 91-1, Ex. A at ECF 9.) Among other requirements, to obtain co-op reimbursement, the advertising must comply with "the North Face Minimum Advertising Price (MAP) policy." (*Id*. at ECF 19.)

The MAP policy allows for certain "break dates" during which North Face products that are discontinued at the end of a season may be featured in advertising for clearance of end-of-season sales. (Dkt. No. 94-1 at ¶¶ 20-21; Dkt. No. 91-1, Ex. A at ECF 19.) The Vincis "always

complied with MAP [because] they could not risk losing such a significant source of advertising dollars"—the program afforded them a chance to receive "upwards of $20,000" annually. (Dkt. No. 94-1 at ¶ 22.) While dealers were not required to comply with the MAP policy, dealers who did not comply would forfeit their co-op reimbursement for 60 days, and would not accrue co-op funds during a 60-day suspension period. (*Id*. at ¶ 19; Dkt. No. 91-1, Ex. A at ECF 20.) Any new violation would restart this process. (*Id*.)

The MAP policy is also incorporated into the North Face Unilateral Online Dealer Policy which sets forth policy guidelines for retailers selling North Face products online. (Dkt. No. 94-1 at ¶¶ 23-24; Dkt. No. 91-1, Ex. H at ECF 52.) It states that "failure to comply with the MAP policy will result in suspension of co-op funds and non-accrual pursuant to the MAP policy." (Dkt. No. 91-1, Ex. H at ECF 53.)

Between 2009 and 2016, Will Vinci sent VF Outdoor numerous emails regarding third-party MAP violations. (Dkt. No. 94-1 at ¶¶ 25-27.) Although VF Outdoor would occasionally respond, many times they did not respond at all. (*Id*.) In January 2015, VF Outdoor began "regularly offering" discounted North Face products online "slashing products by anywhere from 30-50%." (*Id*. at ¶ 30.)

In 2016, the Vincis were again invited to participate in the Brand Partner program. (*Id*. at ¶ 31; Dkt. No. 91-1, Ex. C at ECF 34.) The program was similar to that of the prior year, although they were required to purchase more "'Must Have' product line assortments" and this "cost more than the [Vincis] could really afford." (Dkt. No. 94-1 at ¶ 31.) "Spending on maintaining and promoting [the Vincis'] website, and purchasing increasing levels of inventory while sales floundered, required [the Vincis] to dig into [their] savings to keep the business operating." (*Id*. at ¶ 32.) During the 2015-2016 year, the Vincis put approximately $645,000 of their own money into the business. (*Id*.)

In February 2016, the Vincis attended a "Specialty Dealer Roundtable" convened by VF Outdoor in Boston, Massachusetts. (*Id*. at ¶ 38.) They met Francois Goulet VF Outdoor's Vice President and General Manager of the America. (*Id*.) The Vincis raised their concerns about VF Outdoor's ongoing discounting and "how it was ruining brand equity." (*Id*.) Mr. Goulet assured

4

them "that the discounting would be coming to a halt." (*Id.*)  However, the Vincis later "learned that VF Outdoor had no intention of reigning in sales of discounted merchandise." (*Id.* at ¶ 39 (citing a March 14, 2016 email).)

By early 2017, the Vincis' business was "headed for failure." (*Id.* at ¶ 40.)  At Mr. Goulet's suggestion, the Vincis considered selling their business to VF Outdoor and commissioned a business evaluation which "demonstrated the business was worth as much as $1.25 million, exclusive of inventory." (*Id.*; Dkt. No. 94-1, Ex. 33 at ECF 126.)  In response, in April 2017, VF Outdoor offered to take back unsold inventory and apply any credit from such inventory to TNF Gear's outstanding balance of $615,000, assume the lease on the store on Church Street, and pay the Vincis $100,000 in exchange for all the other property in the Store belonging to TNF Gear. (Dkt. No. 94-1 at ¶ 40; Dkt. No. 94-1, Ex. 34 at ECF 136.)  The Vincis rejected VF Outdoor's offer. (Dkt. No. 94-1 at ¶ 41.)

On June 16, 2017, VF Outdoor notified TNF Gear in writing that it was terminating TNF Gear's account and TNF Gear's license to use the "The North Face" trademark as of June 30, 2017 because of TNF Gear's failure to pay its outstanding balance of $615,000 on the line of credit plus interest due. (Dkt. No. 91-1, Ex. F at ECF 45.)  As a result, the Vincis' bank, which had a security interest in TNF Gear's inventory, took possession of the inventory and liquidated it. (Dkt. No. 94-1 at ¶ 41.)

**PROCEDURAL BACKGROUND**

The Vincis and TNF Gear filed this civil action against VF Corporation in the Vermont District Court on May 23, 2017. (Dkt. No. 1.)  Plaintiffs pled four claims for relief: (1) Breach of Contract; (2) Promissory Estoppel; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (4) Fraudulent Nondisclosure.  Before Defendant appeared, Plaintiffs filed an amended complaint realleging the same four claims and adding VF Outdoor LLC as a Defendant. (Dkt. No. 5.)  The Court transferred TNF Gear's claims against VF Outdoor LLC to this District based on a forum selection clause in the parties' Multiparty Guaranty Agreement. (Dkt. No. 22.)  That action was assigned Case No. 18-253.  A month later, the Vermont District Court granted Defendant VF Corporation's motion to dismiss for lack of personal jurisdiction and granted in part

5

and denied in part VF Outdoor's motion to dismiss the Vinci's breach of contract and breach of the covenant of good faith and fair dealing claims under Rule 12(b)(6). (Case No. 18-4126, Dkt. No. 24.) VF Outdoor then moved to change venue to this District. (Id. at Dkt. No. 36.) The court granted the motion and the action was transferred to this District and assigned Case No. 18-4126. (Dkt. Nos. 41, 42.) Both actions were thereafter consolidated. (Dkt. No. 71.)

After the cases were transferred, but prior to consolidation, VF Outdoor filed counterclaims against the Vincis, TNF Gear, and TNF Gear's predecessor KL Sport. (Dkt. No. 32.) The counterclaim pleads six claims: (1) The Breach of Contract re: the Purchase Orders against TNF Gear; (2) Breach of Contract as to the Multiparty Guaranty against TNF Gear/ KL Sport; (3) Breach of Contract as to the Credit Application and Personal Guaranty against TNF Gear/the Vincis; (4) Account Stated against TNF Gear; (5) Open Book against TNF Gear; and (6) Quantum Valebant against TNF Gear.

On June 6, 2019, VF Outdoor filed a motion for summary judgment as to its counterclaims and as to Plaintiff's claims. (Dkt. No. 91.) That motion is now fully briefed and came before the Court for hearing on July 29, 2019. Trial is scheduled to commence on September 16, 2019.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986).

When the party moving for summary judgment does not bear the burden of proof at trial, the party has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that the opposing party cannot produce evidence sufficient to

1 satisfy her burden of proof at trial. *Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets that burden, the non-moving party must show that a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Id*. (internal quotation marks and citation omitted).

**EVIDENTIARY OBJECTIONS**

VF Outdoor has raised a number of evidentiary objections regarding the evidence Plaintiffs have submitted in opposition to its motion for summary judgment. For the most part, the objected to evidence is not material to the Court's decision and it is thus unnecessary to resolve VF Outdoor's objections. To the extent the Order cites to portions of Mr. Vinci's declaration or the exhibits thereto to which VF Outdoor has objected, *see* Dkt. No. 94-1 ¶¶ 27, 39, Ex. 33, the Court is not relying on any hearsay evidence for the truth of the matter and thus any objection on that basis is overruled. *See* Fed. R. Evid. 801(c). The Court overrules VF Outdoor's other objections to Exhibit 33 as the Court only cites to the exhibit as evidence that Plaintiffs obtained a business valuation, but not for the accuracy or contents of that evaluation.

**DISCUSSION**

VF Outdoor insists that it is entitled to summary judgment on each of its breach of contract counterclaims as well as on Plaintiffs' claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and fraudulent nondisclosure. Plaintiffs counter that disputed issues of material fact preclude summary judgment on any of these claims.

**A. VF Outdoor's Counterclaims**

To establish a breach of contract under California law, a claimant must show: "(1) the

contract, (2) the [claimant's] performance or excuse for nonperformance, (3) [the opposing party's] breach, and (4) the resulting damages to [the claimant]." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 228 (2014). VF Outdoor contends that Plaintiffs breached the purchase orders and corresponding invoices, the multiparty guaranty, and the credit agreement and personal guaranty, by failing to pay the $615,637.78 owed on TNF Gear's account with VF Outdoor.

Plaintiffs do not dispute that each of these agreements—the purchase orders, the multiparty guaranty, and the credit agreement—constituted contracts. Nor could they. With respect to the purchase orders, the record reflects that TNF Gear submitted purchase orders to VF Outdoor for North Face merchandise and that in 2015-2016 TNF Gear purchased $2,130,000 in merchandise. (Dkt. Nos. 32, 51 at ¶¶ 15, 26-27.) Likewise, with respect to the multiparty guaranty, there is no dispute that TNF Gear and its predecessor KL Sport entered into the multiparty guaranty with VF Outdoor in October 2011, or that the multiparty guaranty is a contract. (Dkt. Nos. 32, 51 at ¶¶ 38; Dkt. No. 91-2, Ex. K.) Under the multiparty agreement, VF Outdoor agreed to continue the parties' relationship and sell North Face goods to TNF Gear/KL Sport in exchange for an unconditional, absolute and irrevocable guarantee that TNF Gear/KL Sport will provide "prompt and complete payment when due…of all Obligations."[5] (Dkt. No. 91-2, Ex. K at ECF 10.) Finally, with respect to the credit application and personal guaranty, there is no dispute that TNF Gear submitted a credit application accompanied by a personal guaranty from the Vincis in March 2012. (Dkt. Nos. 32, 51 at ¶¶ 22, 45.) Credit applications are contracts. *See In re Amoroso*, 222 F. App'x 542, 543 (9th Cir. 2007) (citing *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89 Cal.App.4th 1042, 1049–50 (2001)).

The record also establishes VF Outdoor's performance on the contracts; that is, it provided Plaintiffs with North Face merchandise and extended Plaintiffs a line of credit. (Dkt. Nos. 32, 51

---

[5] Obligations is defined as "all loans, advances, debts, liabilities and obligations for monetary amounts from time to time owing by the Company [separately defined as KL Sport] or any of the other Guarantors [separately defined as TNF Gear/KL Sport] to the Beneficiary [separately defined as VF Outdoor], including, without limitation, any and all monetary amounts owed to the Beneficiary for Goods sold to or through the Company or any of the other Guarantors…" (Dkt. No. 91-2, Ex. K at ECF 10.)

8

at ¶¶ 34, 46; Dkt. No. 91-2, Long Decl. at ¶ 8.) Plaintiffs further admit that they have not paid VF Outdoors approximately $615,637.78 for purchased merchandise. (Dkt. Nos. 32, 51 at ¶ 35; Dkt. No. 91-2, Long Decl. at ¶ 8.) VF Outdoor's damages are the unpaid balance plus interest. *See* Cal. Com. Code § 2709(1)(a) ("When the buyer fails to pay the price as it becomes due the seller may recover . . . the price (a) [o]f goods accepted" by the buyer."); *see also* Cal. Civ. Code § 3302 ("The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.").

Based on the record before the Court, VF Outdoor has satisfied its burden of demonstrating the absence of a genuine dispute of material fact on the essential elements of its breach of contract counterclaims. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *see also Atl. Mut. Ins. Co*., 891 F.Supp. at 513 ("Where the moving party has the burden of [proof at trial,] his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."). Thus, the burden shifts to Plaintiffs to "present significant probative evidence tending to support its claim or defense." *See C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000). As discussed below, Plaintiffs have not met that burden.

Plaintiffs mount two arguments to Defendants' contract claims. First, that the purchase orders included an "implied term" that the Vincis "would be afforded an opportunity to earn a profit on their merchandise," but VF Outdoor deprived Plaintiffs of this opportunity by "putting itself in direct competition" with the Vincis such that they did not get the benefit of their bargain. (Dkt. No. 94 at 24:20-24.) Second, Plaintiffs insist that VF Outdoor's failure to disclose that it was "flooding the market with massive amounts of closeout inventory" "vitiated" Plaintiffs' obligation to pay the outstanding balance due on the already purchased merchandise. (*Id*. at 25:4-5, 17-18.) Neither argument is availing.

Plaintiffs do not offer any legal authority or evidence in support of their benefit of the bargain defense; rather, they simply assert that an implied term of the purchase orders was that they would be able to earn a profit and that VF Outdoor "owed the Vincis some kind of warning." (Dkt. No. 94 at 24:25-26.) But Plaintiffs do not identify any provision in the purchase orders

9

which guaranteed them a profit or required them to pay for merchandise received only if they were able to profit from their sales. In general, "[i]mplied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity." *In re Marriage of Corona*, 172 Cal. App. 4th 1205, 1222 (2009). "A court may find an implied contract provision only if: (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication." *Id*. Plaintiffs do not argue that their benefit of the bargain defense satisfies even one of these required factors; nor does the evidence in the record support an inference that any of these factors could be satisfied, let alone all. Accordingly, Plaintiffs' benefit of the bargain defense fails as a matter of law.

Plaintiffs' failure to disclose defense is essentially a fraud in the inducement defense; that is, that VF Outdoor induced Plaintiff to participate in the Brand Partner Program and buy additional merchandise while concealing that it was liquidating large amounts of inventory. Fraud in the inducement is a subset of fraud which "occurs when the promisor knows what he is signing but his consent is induced by fraud." *Rosenthal v. Great W. Fin. Sec. Corp*., 14 Cal. 4th 394, 415 (1996) (internal citation and quotation marks omitted). Where such fraud exists, although the consent is induced by fraud, mutual assent is present and a contract is formed, but such a contract is voidable based on the fraud. *See Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas. Co*., 50 Cal. 4th 913, 921 (2010). With fraud in the inducement, "the party seeking to void the contract must rescind under our statutory and common law rules. Rescission requires that the aggrieved party provide the other party to the agreement with prompt notice and an offer to restore the consideration received, if any." *Id*. (internal citation and quotation marks omitted). Plaintiffs have not argued that they attempted to rescind the contract and the evidence is to the contrary. Although it is undisputed that Plaintiffs knew at least as of April 2016 that VF Outdoor was "regularly offering discounted The North Face products online, slashing prices by anywhere from

10

30-40%," Plaintiffs continued to participate in the Brand Partner Program and accept merchandise from VF Outdoor throughout 2016. (Dkt. No. 94-1 at ¶¶ 30-31; Dkt. No. 91-2 at ¶ 8.) Plaintiffs' failure to rescind the contract and return the merchandise precludes them from establishing the defense of fraud in the inducement. *See Vill. Northridge Homeowners Assn.*, 50 Cal. 4th at 921.[6]

Because there is no dispute of material fact as to VF Outdoor's breach of contract counterclaims and Plaintiffs' defenses to these claims fail as a matter of law, VF Outdoor is entitled to summary judgment on these claims.[7]

### B. Plaintiffs' Claims

VF Outdoor also contends that it is entitled to summary judgment on Plaintiffs' claims for: (1) Breach of Contract; (2) Promissory Estoppel; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (4) Fraudulent Nondisclosure. To prevail on its motion for summary judgment, VF Outdoor must show an absence of evidence to support "an element essential to [Plaintiffs'] case, and on which [Plaintiffs'] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court addresses each claim in turn.

#### 1) Plaintiffs' Breach of Contract Claim

As noted above, to establish a breach of contract under California law, a claimant must show: "(1) the contract, (2) the [claimant's] performance or excuse for nonperformance, (3) [the opposing party's] breach, and (4) the resulting damages to [the claimant]." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 228 (2014). Plaintiffs allege that their inventory purchases from 2001 forward gave "rise to settled expectations and an overarching contractual undertaking" pursuant to which "Plaintiffs were expressly obligated to follow and abide by Defendants' marketing policies, including manufacturer approved pricing." (FAC at ¶¶ 20-21.) Plaintiffs further allege that VF Outdoor "breached the terms of the parties' contract by failing to

---

[6] Given Plaintiffs' failure to show that they rescinded the contract, Plaintiffs have not established that the contract is voidable and the Court need not address whether they have otherwise established the elements of fraud in the inducement. Should it do so however, it would conclude that Plaintiffs have not.
[7] VF Outdoor only seeks summary judgment on its breach of contract counterclaims contending that its common count claims are moot if summary judgment is entered in its favor on the breach of contract claims.

11

enforce their own marketing policies, and by offering their products to competing retailers at deep discounts." (*Id*. at ¶ 23.) While Plaintiffs' complaint does not tether their breach of contract claim to a particular contract, Plaintiffs' opposition to VF Outdoor's motion for summary judgment clarifies that Plaintiffs' claim is based on VF Outdoor's failure to enforce the MAP. (Dkt. No. 94 at 26:6-23.) At oral argument, Plaintiffs contended that VF Outdoor breached the MAP by offering its own products at a discount and by failing to enforce the MAP policy as to other resellers. Neither argument is availing.

The MAP policy is outlined in VF Outdoor's The North Face Dealer Co-Op Advertising Program Overview and Guidelines. (Dkt. No. 91-1, Ex. A.) The Guidelines advises resellers:

> **Category 4: Minimum Advertised Price Policy (MAP)**
> You are free to advertise and sell The North Face® products at any price you deem appropriate; however, to be eligible for co-op reimbursement, advertising must be in compliance with The North Face® Minimum Advertising Price ("MAP") policy.

(Dkt. No. 91-1, Ex. A at ECF 19.) The MAP policy includes detailed requirements for those retailers seeking co-op reimbursement for their advertising. (*Id*.) These requirements specify the type of advertising resellers can engage in and the language resellers can use with respect to advertising. (*Id*. at ECF 18-19.) Resellers who do not comply are ineligible for co-op reimbursement. (*Id*. at ECF 19.)

VF Outdoor contends that the MAP policy only applies to resellers and not itself, although it "voluntarily complies with the MAP policy." (Dkt. No. 91-1 at ¶ 7.) The Court need not reach this issue because even if the MAP policy applied to VF Outdoor, Plaintiffs have not offered any evidence that VF Outdoor breached the policy with respect to its own advertising. While Plaintiffs have submitted numerous screenshots of products being sold on thenorthface.com at a discount, they have not offered evidence showing that thenorthface.com *advertised* discounts to its products online. (Dkt. No. 94-1 at Exs. 40-47.) The following are forms of advertising covered by the co-op advertising policy and MAP:

> Co-op reimbursement is provided for the following forms of advertising only:
>
> - Newspapers
> - Magazines
> - Direct Mail Inserts/Catalogs
> - Outdoor Signs/Billboard (including Production Costs)
> - Radio
> - Television/Cable
> - Fixtures
> - Visual Merchandising Enhancements
> - Events/Sponsorships
> - Internet/Display Advertising
>   - Banner ads including Social Media sites
>   - E-mail Blasts
> - Other Media

(Dkt. No. 91-1, Ex. A at ECF 10.) Plaintiffs have not offered evidence that VF Outdoor *advertised* discounts in any of these forms. Thus, Plaintiffs have failed to provide factual support for their breach of contract claim predicated on VF Outdoor's breach of the MAP policy by offering its own products at a discount.

Plaintiffs' breach of contract claim based on VF Outdoor's failure to enforce the MAP policy against third-party resellers fares no better. While Plaintiffs have offered evidence that they repeatedly complained about third-party resellers breach of the MAP policy to VF Outdoor, they have not offered any evidence that VF Outdoor reimbursed those allegedly non-compliant resellers their advertising costs. (Dkt. Nos. 94-1 at ¶¶ 25-26.) At oral argument, Plaintiffs admitted that they had no direct evidence that VF Outdoor had not reimbursed the non-compliant resellers. This lack of evidence is fatal to Plaintiffs' breach of contract claim. The MAP states that resellers are "free to advertise and sell The North Face products at any price [they] deem appropriate," but they will not receive reimbursement under the co-op advertising program unless they comply with MAP. (Dkt. No. 91-1, Ex. A at ECF 19.) Thus, any breach of contract claim based on VF Outdoor's failure to comply with the MAP requires evidence that VF Outdoor actually reimbursed non-compliant resellers. Because Plaintiffs have not offered any such evidence, their breach of contract claim based on VF Outdoor's failure to enforce the policy as to other resellers fails as well.

Likewise, to the extent Plaintiff's breach of contract claim is tethered to the purchase agreements and Plaintiffs' argument that the purchase agreements contained an implied term that they would make a profit from their purchases which VF Outdoor breached by failing to enforce the MAP pricing plan, this theory fails for the reasons discussed *supra*. *See In re Marriage of*

*Corona*, 172 Cal. App. 4th 1205, 1222 (2009) ("A court may find an implied contract provision only if [] the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions").

Even if Plaintiffs had established the existence of an agreement which VF Outdoor allegedly breached, their breach of contract claim would still fail as a matter of law because the undisputed facts show that they have not performed on their part of the contract(s). Plaintiffs do not dispute that TNF Gear has an outstanding unpaid balance with VF Outdoor of $615,637.78. (Dkt. No. 91-2 at ¶ 8.) Plaintiffs' lack of performance on the contract(s) precludes them from prevailing on their breach of contract claim. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) ("[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default.").

Because Plaintiffs have failed to demonstrate a factual or legal basis for their breach of contract claim, VF Outdoor is entitled to summary judgment on this claim.

**2) Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs also plead a claim for breach of the implied covenant of good faith and fair dealing. Unlike a breach of contract claim, a breach of the implied covenant claim is not based on the breach of an explicit contractual term; rather, "A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Careau v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990). This is because every contract possesses an implied covenant of good faith and fair dealing in which "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988). As such, if the "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau*, 222 Cal. App. 3d at 1395.

Here, Plaintiffs' breach of the covenant of good faith and fair dealing claim is based on the same allegations as their breach of contract claim as well as the allegation that VF Outdoor

14

"breached the implied covenant of good faith and fair dealing by offering to purchase Plaintiffs' business for only a small fraction of what it was worth, while at the same time forbidding Plaintiffs from accepting any competing offers for the purchase of their business." (FAC at ¶ 35.) To the extent that Plaintiffs' breach of the implied covenant claim is based on the same allegations as their breach of contract claim, it is superfluous of the breach of contract claim. The Court thus only addresses Plaintiffs' allegation that VF Outdoor breached the covenant by undervaluing their business and precluding them from accepting competing offers for the business.

Plaintiffs have offered evidence of a business evaluation which Mr. Vinci attests was commissioned after Francois Goulet suggested that the Vincis sell the business to VF Outdoor. (Dkt. No. 94-1 at ¶ 40; Ex. 33 at ECF 126.) The business evaluation contains a number of figures, but is not accompanied by an expert declaration or other explanation for the contents. (*Id.* at ECF 129-134.) Further, that Plaintiffs sent this business evaluation to VF Outdoor as part of the parties' negotiations regarding the sale of the business to VF Outdoor does not show that VF Outdoor breach the implied covenant of good faith and fair dealing by offering less than the business evaluation as a counteroffer. *See Careau*, 222 Cal. App. 3d at 1395 (holding that breach of the covenant of good faith and fair dealing requires "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement"). Plaintiffs have offered no evidence in support of their allegation that VF Outdoor precluded Plaintiffs from accepting competing offers to purchase the business.

Accordingly, Plaintiffs have not satisfied their evidentiary burden to support a breach of the implied covenant claim, and have not demonstrated that the claim is different from the one for breach of contract. VF Outdoor is thus entitled to summary judgment on this claim.

**3) Promissory Estoppel**

Next, Plaintiffs plead a claim for promissory estoppel. "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Flintco Pac., Inc. v. TEC Mgmt.*

*Consultants, Inc*., 1 Cal. App. 5th 727, 734 (2016) (internal citation and quotation marks omitted). Plaintiffs' promissory estoppel claim is based on the same theory as their breach of contract claim; namely, that VF Outdoor imposed certain marketing policies which Defendants "promise[d] to enforce," but it failed to do so and encouraged others to "flout" the policies while also violating the policies themselves." (FAC at ¶¶ 26-29.)

As a threshold matter, Plaintiffs' promissory estoppel claim cannot be based on the same promises as their breach of contract claim—i.e., any promises purportedly contained in the MAP policy. *See Raedeke v. Gibraltar Sav. & Loan Assn*., 10 Cal. 3d 665, 672 (1974); *Walker v. KFC Corp*., 728 F.2d 1215, 1219 (9th Cir. 1984). In opposing summary judgment, the only specific promise Plaintiffs identify is the one Francois Goulet made to Mr. Vinci that VF Outdoor would soon halt online discounting. (Dkt. No. 94 at 27:3-6.) Mr. Vinci attests that Mr. Goulet told him at the February 2016 "Specialty Dealer Roundtable" that "the discounting would soon be coming to a halt." (Dkt. No. 94-1 at ¶ 38.) This promise is not sufficiently definite to give rise to a claim of promissory estoppel. The promise must be "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1045 (2010). That VF Outdoor stated that discounting "would soon" come "to a halt" is vague at best—it provides no specific timeframe by which the Court could measure its performance. Further, by Mr. Vinci's own admission, the Vincis were aware as of the following month that "VF Outdoor had no intention of reigning in sales of discounted merchandise." (Dkt. No. 94-1 at ¶ 39.) Thus, even if the promise to halt discounting soon was an actionable promise, the Vincis' reliance on it would be limited to the month of February 2016 and Plaintiffs have failed offer evidence of any harm resulting from their reliance on Mr. Goulet's promise during this one-month period.

Accordingly, Plaintiff have failed to demonstrate a factual or legal basis for their promissory estoppel claim and VF Outdoor is entitled to summary judgment on this claim.

### 4) Fraudulent Nondisclosure

Plaintiffs' final claim is for fraudulent nondisclosure. The elements of a claim for

fraudulent nondisclosure (concealment) are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014). Plaintiffs allege that from 2015-2017 VF Outdoor "changed their marketing policy, dumping large quantities of goods into the discount market," that VF Outdoor failed to disclose this change in its marketing policy to Plaintiffs, and that had VF Outdoor disclosed these changes to Plaintiffs they would not have "sunk millions of dollars into inventory purchases and could have salvaged some value out of their business." (FAC at ¶¶ 39-40.) While not clearly articulated in their opposition brief, it appears that Plaintiffs' claim is premised on the following alleged nondisclosures: (1) that VF Outdoor planned to sell its own merchandise at a discount online, (2) that VF Outdoor did not itself comply with the MAP policy, (3) that VF Outdoor failed to disclose that it was not requiring other retailers to comply with the MAP policy, and (4) that VF Outdoor knew of increased closeout inventory in liquidation channels. The Court addresses each in turn.

First, Plaintiffs have not identified any evidence that reasonably supports the inference that VF Outdoor failed to disclose that it planned to sell its own merchandise at a discount online. To the contrary, the evidence reflects that on January 21, 2015, VF Outdoor advised Mr. Vinci of its new marketing plan and intent to offer its own product at a discount online. (Dkt. No. 91-3 at ¶ 8; Ex. T.) Mr. Vinci confirmed that he was aware of the planned discounting in an email to another North Face retailer, Alpine Outfitters, on January 23, 2015. (Dkt. No. 91-3 at ¶ 9; Ex. U.)

Second, Plaintiffs have failed to offer evidence that VF Outdoor either promised that it would comply with the MAP policy or suggested that the MAP policy covered VF Outdoor's advertising activity. Again, the evidence is to the contrary. The MAP policy itself is directed at "Online Dealers and Online Dealer Affiliates." (Dkt. No. 91-1, Ex. H at ECF 52.) There is no reference to the MAP policy applying to VF Outdoor's advertising activity in the document outlining the policy or elsewhere. Indeed, the co-op advertising program on which the MAP

17

policy is based states that eligibility is limited to "[a]ny dealer who is authorized to sell The North Face products directly to the end user." (Dkt. No. 91-1, Ex. A at ECF 9.) And given that the purpose of the policy was to allow dealers to obtain reimbursement from VF Outdoor it would not make sense for the policy to apply to VF Outdoor—it has no need to obtain reimbursement from itself. Further, as discussed *supra*, Plaintiffs have failed to offer any evidence that VF Outdoor did not in fact comply with the MAP policy.

Third, Plaintiffs have not offered evidence showing that VF Outdoor did not require other retailers to comply with the MAP policy. That is, as discussed *supra*, Plaintiffs have not identified evidence sufficient to support a finding that VF Outdoor in fact reimbursed advertising costs of third-party dealers who were non-compliant with the MAP policy. Absent evidence that VF Outdoor was not enforcing the policy by reimbursing other dealers who failed to comply, there was nothing for VF Outdoor to disclose.

Finally, Plaintiffs have not offered evidence that VF Outdoor failed to disclose that it was increasing closeout inventory in liquidation channels. Plaintiffs do not dispute that they were aware of VF Outdoor's liquidation practices and that as brand partners they were afforded early access to closeout inventory. (Dkt. No. 91-1 at ¶ 14; Ex. C at ECF 26.) To the extent VF Outdoor increased the amount of closeout inventory subject to liquidation in 2015, Plaintiffs have not offered any evidence which shows that VF Outdoor intentionally concealed this information from Plaintiffs. VF Outdoor, on the other hand, has offered evidence—that Plaintiff has not disputed—showing that it had no means of knowing in advance the volume of excess merchandise that might end up in liquidation channels because merchandise is manufactured months in advance based on sales volume estimates which are just that—estimates—that are subject to outside forces such as cancellation of orders or unusually warm winter weather. (Dkt. No. 91-1 at ¶¶ 12-13; Dkt. No. 91-4 at ¶ 54.)

To the extent that the Vincis have personal claims of fraudulent concealment, their personal claims based on these same alleged non-disclosures fail as to them for the same reasons. In addition, Plaintiffs have not established that VF Outdoor owed them any duty—where there is no fiduciary relationship between the parties, the duty to disclose arises "as a result of some sort of

18

transaction between the parties." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). The Vincis have not offered any evidence of a transactional relationship between themselves and VF Outdoor (as opposed to between their businesses and VF Outdoor). The Vincis' reliance on the Vermont District Court's decision denying VF Outdoor's motion to dismiss their individual fraudulent concealment claims as constituting "the law of the case" suggesting that the court already found in their favor on these claims is misplaced. (Dkt. No. 94 at 27:22-26.) The Vermont District Court denied a motion to dismiss the claim, it did not grant summary judgment for the Vincis' on the claim. It also did not apply California law, which the Vincis concede apply to their claims. (Case No. 18-4126, Dkt. No. 24.) On summary judgment, the Vincis were obligated to offer *evidence* in support of their allegations. Because they have failed to do so, VF Outdoor is entitled to summary judgment.

Accordingly, Plaintiffs have failed to demonstrate a factual or legal basis for their fraudulent nondisclosure/concealment claim generally and as to the Vincis personally. VF Outdoor is therefore entitled to summary judgment on this claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS VF Outdoor's motion for summary judgment on its breach of contract counterclaims and on Plaintiffs' claims. (Dkt. No. 91.) VF Outdoor is awarded damages in the amount of $615,637.78 plus interest from June 16, 2017.

Judgment will be entered separately in VF Outdoor's favor against TNF Gear, KL Sports, William Vinci, and Linda Vinci jointly and severally.

**IT IS SO ORDERED.**

Dated: July 30, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

19